UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRENTON EZEKIEL JAMES,

Petitioner,

vs.

DEBBIE ASUNCION, Warden,

Respondent.

No. 2:16-cv-1170-EFB P

MEMORANDUM AND ORDER

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] He challenges a judgment of conviction entered against him on August 29, 2012 in the Superior Court of Sacramento County on charges of simple battery[2], assault by means likely to produce great bodily injury, misdemeanor resisting, delaying and obstructing an officer, and misdemeanor willful harm or injury to a child. He seeks federal habeas relief on the following grounds: (1) his trial counsel was ineffective in failing to obtain video surveillance tape which would have exonerated him; (2) trial counsel was ineffective in

---

[1] The parties in this action have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). ECF Nos. 3 & 9.

[2] Petitioner was initially convicted of battery on a transportation official within the meaning of California Penal Code § 243.3. Lodged Document Two ("Clerk's Transcript Volume II") at 366. That conviction was reversed on appeal and reduced to simple battery within the meaning of code § 242. *People v. James*, 230 Cal.App.4th 1256 (Cal.App. 3 Dist., 2014).

1

failing to interview witness Brenda Grob; (3) appellate counsel was ineffective in failing to challenge the sufficiency of the evidence underlying his assault conviction; and (4) the trial court violated his due process rights by denying his *Marsden*[3] motion. Upon careful consideration of the record and the applicable law, petitioner's application for habeas corpus is denied.

## I. Background

On direct appeal, Respondent's brief provided the following factual summary of the case against petitioner. The court reproduces it here, with citations to the record omitted, for background purposes only:

> On May 5, 2012, Matt Thompson was working as a security officer for G4S transit security, a private security company, that provided contract security services for the Sacramento Regional Transit. Thompson was assigned to protect passengers, employees, and property on Train Number One of the Sacramento Regional Transit. Thompson was on duty wearing his uniform, which consisted of a duty belt, pepper spray, handcuffs, gloves, flashlight, baton holster, and radio holster. His uniform also had patches which said "Private Security," "G4S," "Transit Security," and contained the Sacramento Regional Transit logo. Thompson also carried a badge, which said "G4S" and contained his badge number.
>
> At approximately 6:30 p.m., Thompson boarded the train at the Watt Avenue/Interstate-80 station. Appellant, his nine-year old daughter, and co-defendant Edwin Davis were among the approximately 50 to 60 passengers on the train. As Thompson walked down the aisle of the train, appellant spit sunflower seeds at him. Thompson asked appellant, "Are you really going to spit sunflower seeds on me?" Appellant who is approximately 6 foot 5 inches tall and weighs about 350 pounds, stood up from his seat to confront Thompson, who is 6 feet tall and weighs about 175 pounds. Appellant made threatening remarks to Thompson, but Davis intervened and told appellant to sit down. Appellant sat back down, but continued to make threatening remarks toward Thompson during the ensuing 15 to 20 minute train ride downtown. Thompson noted that both appellant and Davis appeared to be intoxicated.
>
> When the train stopped at a station near downtown, three women boarded, and two of them immediately started fighting with each other. Thompson

---

[3] Referring to *People v. Marsden*, 2 Cal. 3d 118 (Cal. 1970) which held that a trial court must allow a criminal defendant requesting substitution of his counsel an opportunity to present his rationale for substitution. *See Schell v. Witek*, 218 F.3d 1017, 1021 (9th Cir. 2000) ("Under California law, this in shorthand is called a "Marsden motion." . . . Normally, the essence of such a motion is that appointed counsel's representation has in some significant measure fallen below the level required by the Sixth Amendment.") (internal citation omitted).

2

watched the women for a short period before he attempted to intervene to break up the fight. But appellant stood up in the middle of the aisle to block Thompson's path. When Thompson tapped appellant's shoulder and asked to get by, appellant bent down and used his body to back Thompson down the aisle into another seating area. At that point, the train stopped at the next station, and Thompson disembarked and walked around the train to make sure none of the women were injured. After speaking with the sole remaining participant in the fight, Thompson reboarded the train. The train soon started moving, and Thompson saw appellant standing approximately 6 to 12 inches from another passenger's face and yelling at him. Thompson told appellant to sit down. Appellant then made threatening remarks toward Thompson and leaned over him.

Another passenger on the train, Brenda Grob, approached appellant and told him that his daughter was upset and crying. Appellant looked at Grob and remarked, "Shut the fuck up, bitch. I'll beat your fuckin' ass." Thompson drew his baton and attempted to step between Grob and the appellant. Appellant then began punching Thompson, hitting him approximately nine to ten times in the head and face. Appellant and Davis forced Thompson into a stairwell in front of a door, and Thompson bent down and covered his head and body with his hands. Thereafter, appellant reached around and grabbed Thompson in a bear hug, pulling him out of the stairwell and dragging him down the aisle. Appellant released Thompson, and Thompson struck appellant with his baton two more times in the calf with seemingly no effect. Thompson then backed away down the aisle and pulled the emergency latch to stop the train. Thompson jumped off the train and radioed the police for back-up. Appellant and Davis followed Thompson off the train, looked at him, and then reboarded the train.

Regional Transit Police Officer Elias Bonilla responded with his partner to Thompson's call within approximately 15 to 20 seconds, and they proceed to search for appellant and Davis. They located appellant walking down an alleyway, jumped out of their patrol vehicle, and ordered appellant to get on the ground. Appellant did not immediately comply with the officers' orders and they had to repeat themselves. Appellant remarked, "What? I didn't do anything." Officer Bonilla physically forced appellant to the ground and placed him in handcuffs. The officers then tried to place appellant in the back of the patrol vehicle, but he refused to comply. Appellant refused to sit down, and Officer Bonilla had to use physical force to bend appellant into the patrol vehicle. Once appellant was inside, he continued shouting and making threatening remarks toward all three officers while kicking both of his legs against the doors. Davis arrived with appellant's daughter a short time later, and she began to cry hysterically.

Approximately 15 to 20 minutes after the altercation, Thompson felt throbbing on the side of his head, his eye started to swell, and a black eye appeared. Officers offered to call the fire department so they could provide

3

> medical attention to Thompson, but he declined. Approximately a week later, Thompson saw a doctor because his face was still swollen and he wanted to rule out a concussion.

Lodged Document Ten ("Respondent's Brief on Direct Appeal") at 4-7.

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S.

58, 64 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

/////

/////

/////

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether

6

a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

    **A.    Ineffective Assistance of Counsel**

As noted above, petitioner has raised three separate claims regarding the ineffectiveness of his counsel – both at trial and on appeal. The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id*. at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id*. at 687-88 (internal quotation marks omitted).

/////

7

"Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 at 104 (quoting *Strickland*, 466 U.S. at 687).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

"The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Thus, in federal habeas proceedings involving "claims of ineffective assistance of counsel, . . . AEDPA[5] review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotations and citations omitted). As the Ninth Circuit has recently acknowledged, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (quoting *Richter*, 562 U.S. at 105). *See also Griffin v. Harrington*, 727 F.3d 940, 945 (9th Cir. 2013) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard.") (quoting *Richter*, 562 U.S. at 101).

### 1. **Failure to Obtain Surveillance Tape**

Petitioner's first claim is that his trial counsel was constitutionally ineffective in failing to obtain surveillance video of his interactions with Officer Thompson. ECF No. 1 at 25-26.[6] He contends that this video, had it been obtained, would have proved that he had not assaulted Thompson or caused him any injury. *Id*. at 26. Petitioner presented this claim for the first time in his habeas petition to the California Supreme Court (Lodged Document Sixteen ("Petition for

---

[5] An acronym for the Anti-Terrorism and Effective Death Penalty Act.

[6] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

8

Review") at 9-10) which was summarily denied (Lodged Document Seventeen ("Order Denying Petition for Review")). Where a state court reaches a decision on the merits but declines to provide any reasoning supporting its conclusion, a federal habeas court engages in an independent review of the record to determine whether relief is available under § 2254(d). *Stanley* 633 F.3d at 860. As noted above, independent review is not de novo review of the constitutional issue, however. *Himes*, 336 F.3d at 853. Additionally, even where there is no reasoned decision from a state court, the burden of "showing that there was no reasonable basis for the state court to deny relief" rests with the petitioner. *Harrington*, 562 U.S. at 98.

As respondent notes in her answer, there is no evidence that any exculpatory video evidence existed. At trial, Officer Thompson testified that the train cameras experienced a hard-drive error which rendered recovery of any pertinent video impossible.

> Prosecution: Does the train have cameras?
>
> Thompson: It does.
>
> Prosecution: Were you able to retrieve the videos in this case?
>
> Thompson: I did not, myself, try to receive – retrieve the video, but they attempted to be retrieved by personnel. To which they were unsuccessful. There was a hard-drive error in the cameras themselves.
>
> Prosecution: Now, how long have you worked for regional transit?
>
> Thompson: I have worked about a year and three months.
>
> Prosecution: Have you experienced problems with cameras on the train before?
>
> Thompson: Absolutely. Absolutely.
>
> Prosecution: How many times would you say?
>
> Thompson: I've seen situations – I mean, probably five – five, to six times a week these cameras have a hard-drive error, which is a pretty significant amount.

Lodged Document Six ("Reporter's Transcript, Vol. II") at 470-471. Petitioner has not provided any evidence indicating that Thompson's testimony was false or mistaken. As such, he cannot demonstrate that he was prejudiced by his counsel's failure to obtain a video whose recovery was

9

precluded by technical problems. *See Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (declining to find prejudice where petitioner provided no evidence as to what his attorney "would have found had he investigated further.").

### 2. Failure to Interview Witness Brenda Grob

Petitioner's second claim is that his trial counsel was ineffective in failing to interview witness Brenda Grob. ECF No. 1 at 26-27. He argues that, had his counsel conducted this interview, he would have been able to develop a successful imperfect self-defense claim emphasizing his belief that his daughter was in immediate danger as a result of: (1) the ongoing fight between two female passengers and (2) Thompson's attempt to intervene in that altercation. *Id*. Petitioner also notes that his trial counsel's failure to interview Grob was especially egregious because she had previously provided a statement indicating that he had never actually touched Thompson during the altercation. *Id*. at 27. Her statement purportedly indicated that, instead, only petitioner's co-defendant had struck the officer. *Id*.

This claim was also presented for the first time in petitioner's habeas petition to the California Supreme Court (Lodged Document Sixteen ("Petition for Review") at 10-11) which was summarily denied (Lodged Document Seventeen ("Order Denying Petition for Review")). The same standards propounded in the foregoing section regarding non-reasoned state decisions therefore apply.

Respondent argues that petitioner has failed to present any evidence that his trial counsel actually failed to interview Grob prior to his trial or that Grob ever made a statement indicating that he never touched Thompson. ECF No. 11 at 20. The latter argument is convincing in light of Grob's trial testimony on direct examination:

> Prosecution: And how many swings did the defendant actually make at the security officer?
>
> Grob: About four or five swings.
>
> Prosecution: And how many of those swings actually hit the security officer?
>
> Grob: Probably three.

10

> Prosecution: And could you tell from where you were sitting where the actual swings or strikes landed on the security officer?
>
> Grob: His upper body. At this time I stood up and the uncle was sitting back down across from the child and she's screaming, daddy, no. So I'm looking at her and I'm looking at them. And I'm looking at her she's got tears coming down her face.

Lodged Document Six ("Reporter's Transcript, Vol. II") at 526. She re-iterated this account on cross-examination:

> Defense: You said Mr. James, I think the phrase you used, was "touched him up"?
>
> Grob: Yeah.
>
> Defense: Okay. And you're holding your closed fist, what kind of motion was it?
>
> Grob: He was swinging at him and backing him up, making contact.
>
> Defense: Okay.
>
> Grob: All the way to the back of the train.
>
> Defense: And you said he swung at him maybe four or five times?
>
> Grob: Yeah.
>
> Defense: And that he hit him in like the upper body area like in the torso?
>
> Grob: Uh-huh
>
> Defense: Okay.

*Id.* at 553. Petitioner has not pointed to a specific pre-trial statement from Grob which contradicts this testimony. Respondent states that the closest analogue in the record is likely the trial testimony of the police officer who took a statement from Grob in the aftermath of the altercation. ECF No. 11 at 20. This testimony lends little support to petitioner, however. The officer did testify that Grob's statement indicated that petitioner's co-defendant had punched Thompson in the face three times. ECF No. 1 at 130. He also testified, however, that Grob's statement indicated that both petitioner and his co-defendant had pushed Thompson across the train and pinned him against a door.

11

| | |
|---|---|
| 1 | Prosecution: Okay. That's a statement you took from Miss Grob? |
| 2 | Officer: Yes, sir. |
| 3 | Prosecution: Okay. Miss Grob told you that the person in the black shirt struck the train guard in the face three times; is that correct? |
| 4 | |
| 5 | Officer: Yes, sir, that's correct. |
| 6 | Prosecution: She went on to state that both guys pushed the guard half a length of the car, eventually pinned him against the door; is that right? |
| 7 | |
| 8 | Officer: Yes, sir. |
| 9 | Prosecution: She used the word push; right? |
| 10 | Officer: I believe so, yes, sir. |

*Id*. at 130-131. The record simply does not permit the conclusion that trial counsel's failure to interview Grob foreclosed a realistic opportunity to cast petitioner's actions in the non-violent light he now suggests.

Nor has petitioner adequately explained how interviewing Grob would have enabled a successful imperfect self-defense claim. At trial, Grob testified that petitioner took purposeful steps to prevent Thompson from intervening in the fight between the female passengers. Lodged Document Six ("Reporter's Transcript, Vol. II") at 518-520. She also testified that petitioner's daughter was in her seat, out of harm's way, and imploring him to stop fighting during his confrontation with Thompson. *Id*. at 527-528.

> Prosecution: Now, I want to take a step back just a little bit. Now I want to talk about the little girl's reaction while this was going on. How close was she sitting to the defendant while this was going on?
>
> Grob: She stayed in her seat, stood up, sat down, stood up, screaming daddy, no, daddy, no as the confrontation goes from here to the back of the train. And when you're – when something like that's happening you're looking. And her voice sounds – I'm looking at her and she's looking at me like, do something. Like my son would have expected me to do.

*Id*.

/////

/////

In light of this record, there is simply no support for petitioner's contention that he was prejudiced by his trial counsel's failure to interview Grob.

### 3. Appellate Counsel's Failure to Challenge the Sufficiency of the Evidence Underlying Petitioner's Assault Conviction

Next, petitioner claims that his appellate counsel was ineffective in failing to challenge the sufficiency of the evidence underlying his conviction for assault with force likely to produce great bodily injury. ECF No. 1 at 28. He claims that, if counsel had raised this issue on appeal, his conviction would have been reduced to "a simple battery." *Id.* Petitioner raised this claim in his initial habeas petition before the Superior Court of Sacramento County. Lodged Document Twelve ("Petition for Writ of Habeas Corpus, Exhibit 2") at 1-2. The superior court denied this claim in a reasoned decision. Lodged Document Thirteen ("Order Denying Petition). As noted above, the court of appeal and California Supreme Court issued only summary denials in disposing of petitioner's habeas claims. Lodged Document Fifteen ("Order Denying Petition") & Lodged Document Seventeen ("Order Denying Petition"). As such, the superior court's opinion is the last reasoned opinion and this court looks to it in evaluating this claim. The superior court reasoned as follows:

> Finally, the evidence was sufficient to support the verdict, and appellate counsel had no basis to raise this issue on appeal. "The use of hands or fists alone may be sufficient to support a conviction of assault by means of force likely to produce great bodily injury . . . . The essential determination is whether the force was likely to produce great bodily injury rather than the actual injury incurred." (*In re Nirran W.* (1989) 207 Cal. App. 3d 1157, 1161-1162, citations omitted.) Because the focus is on "force <u>likely</u> to produce great bodily injury, whether the victim in fact suffers any harm is immaterial." (People v. Aguilar (1997) 16 Cal. 4th 1023, 1028, emphasis in original.) The photo that petitioner has provided shows that the victim suffered an injury, and the jury was free to conclude that the level of force used was likely to cause great bodily injury.

Lodged Document Thirteen ("Order Denying Petition") at 2-3.

/////

/////

The superior court's decision was not an unreasonable determination of the facts or contrary to established federal law. Petitioner cannot succeed in demonstrating that he was prejudiced by appellate counsel's failure to raise this claim because there is no basis on which to conclude that the evidence underlying his conviction was insufficient. The relevant question in weighing the sufficiency of the evidence is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This court is bound by the California courts' interpretations of state law in evaluating this question. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). As the superior court noted, under California law it is irrelevant whether Thompson actually suffered great bodily harm as a result of petitioner's actions. The relevant state law question, which the superior court answered in the affirmative, is whether that force was likely to produce great bodily injury. At trial, Thompson and Grob both testified that petitioner struck Thompson multiple times, making contact with his face and upper body. Lodged Document Six ("Reporter's Transcript Volume II") at 482, 526. Based on this evidence, a rational trier of fact could easily have concluded that petitioner's actions were likely to produce great bodily injury. His appellate counsel was not obligated to raise a meritless argument to the contrary. *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

### B. Denial of Petitioner's *Marsden* Motion

Petitioner's final claim is that the trial court erred in denying his *Marsden* motion. ECF No. 1 at 29. He claims this denial prejudiced him because, at the time he submitted his *Marsden* motion, "communication between [petitioner] and his counsel had diminished to the point where there was no communication, and petitioner was impeded in his ability to assist counsel in his defense." *Id*. Petitioner presented this claim for the first time[7] in his petition for review to the

---

[7] Petitioner raised a related claim in his habeas petitions before the superior court and court of appeal. Therein he argued that appellate counsel was ineffective in failing to challenge the trial court's apparent bias in denying his *Marsden* motion. Lodged Document Twelve ("Petition for Writ of Habeas Corpus, Exhibit 3") at 1-2; Lodged Document Fourteen ("Petition for Writ of Habeas Corpus, Exhibit 3") at 1-2. By the time he submitted his petition to the California Supreme Court, however, petitioner was no longer construing the claim as ineffective

California Supreme Court. Lodged Document Sixteen ("Petition for Writ of Habeas Corpus") at 13. As noted above, the petition was summarily denied. Lodged Document Seventeen ("Order Denying Petition").

### 1. **Applicable Legal Standards**

The Supreme Court has held that the Sixth Amendment does not guarantee a "meaningful relationship" between a defendant and his appointed counsel. *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). With respect to denial of a *Marsden* motion, the relevant claim on federal habeas review is whether a petitioner's conflict with his appointed counsel had become "irreconcilable." *See Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) ("[F]orcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel." (citing *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970) ("[T]o compel one charged with [a] grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever.")). The ultimate question in determining whether a conflict is irreconcilable is whether "there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007) (citing *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000)). The Ninth Circuit has set out three factors which guide reviewing courts' determination of whether a conflict was "irreconcilable." Foremost among these is the nature and extent of the conflict, most specifically its cause and the circumstances under which it developed and whether the defendant's reasons for loss of confidence in his counsel are legitimate. *Schell*, 281 F.3d at 1026-27. The court should also consider the adequacy of the trial court's inquiry and the timeliness of the motion to substitute counsel. *Stenson*, 504 F.3d at 886.

/////

/////

/////

---

assistance of counsel, but rather as error on the part of the trial court. Lodged Document Sixteen ("Petition for Writ of Habeas Corpus") at 13.

15

## 2. **Analysis**

Petitioner has attached a copy of the reporter's transcript of the sealed *Marsden* proceedings to his petition. ECF No. 1 at 138-144. Therein, the trial court asks petitioner and his trial counsel to detail the substance of their conflict. *Id*. at 138. Petitioner argued that his counsel had failed to provide him with the police report and video surveillance evidence relevant to his case. *Id*. at 139. His counsel stated that he was attempting to procure the video[8] and that he would provide petitioner with a copy of the police report. *Id*. at 141. He noted that the only reason he had not already provided a copy of the police report was because: (1) petitioner had only requested the report that morning; and (2) a printer error had delayed his ability to produce it. *Id*. at 141. The court then asked petitioner whether he had any other issues with his counsel and petitioner replied that he did not. *Id*. at 142. This does not support the claim that the trial court violated his rights by denying the *Marsden* motion.

Crucially, "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." *Schell*, 218 F.3d at 1027. And, as noted *supra*, the Sixth Amendment does not guarantee an attorney-client relationship that is "meaningful" or free of discord. *See Morris*, 461 U.S. at 13-14; *see also Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (en banc) ("[Petitioner] has cited no Supreme Court case—and we are not aware of any—that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts, but with whom the defendant refuses to cooperate because of dislike or distrust."). Petitioner asserted that he wished to review certain documentary evidence and, at the *Marsden* hearing, his counsel affirmatively stated that he would try to procure that evidence for him. Their conflict was not irreconcilable.

**IV. Conclusion**

Accordingly, it is ORDERED that petitioner's application for a writ of habeas corpus is DENIED and a Certificate of Appealability shall not issue.

---

[8] Trial counsel noted that the video he had already been sent appeared to be the wrong video. ECF No. 1 at 141. As noted previously in this memorandum, Officer Thompson testified that the 'right' video was impossible to procure because of a camera hard-drive failure.

16

The Clerk is directed to enter judgment accordingly and close the case.

DATED: December 5, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE